**G. A. WHITE, Appellant,**

v.

**ZONING BOARD OF ADJUSTMENT OF the CITY OF ARLINGTON et al., Appellees.**

No. 16381.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 28, 1962.

Rehearing Denied Jan. 25, 1963.

Mack & Mack, and Theodore Mack, Fort Worth, for appellant.

Robert M. Burnett, City Atty., James H. Knapp, Arlington, Brown, Herman, Scott & Young and Ardell M. Young, Fort Worth, for appellees.

MASSEY, Chief Justice.

Matters at issue in the case on appeal were born in the action of the Board of Adjustment of the City of Arlington, Tarrant County, Texas, granting a permit to one Bill B. Coleman to use Lot 19, Toliver Acres for trailer park purposes, nonconforming to that City's zoning ordinance. Adjacent property was already in use for trailer park purposes. The nonconforming use of said adjacent property antedated the zoning ordinance of the City of Arlington. An adjoining property owner, G. A. White, was devoting the premises belonging to him for residential purposes. White's premises and Lot 19 were zoned for residential use. White objected to the pro-

posed use of Lot 19 as a trailer park. He contested Coleman's application before the Board. The Board granted Coleman's application over White's protest.

White carried his complaint into District Court by procedure conceded to be proper. Following a trial before the court without intervention of a jury, the determination there made was also against him. He perfected his appeal to this court.

Judgment affirmed.

White's points of error all contend that the action of the Board of Adjustment amounted to an abuse of its discretion and deprived him of his property without due process of law or due course of law in violation of the United States Constitution, Amendment XIV, and the Texas Constitution, Article I, Section 19, Vernon's Ann. St., because:

1. The action extended a nonconforming use when such an extension is not permitted by law.

2. The action was based upon the recommendation and report of the Arlington Planning and Zoning Commission, pursuant to its meeting held on October 11, 1961, at which meeting White was denied a hearing on the merits.

3. The action of the Board of Adjustment, which occurred at a meeting held November 21, 1961, took place at a time when White was not given sufficient advance notice.

4. The zoning ordinance of the City of Arlington sets forth no adequate legislative standard upon which the Board of Adjustment could base its decision.

5. The action constituted spot zoning.

Except as related to his complaint about insufficiency of notice of the hearing, White seemingly concedes that if a test is possible to be made of the propriety of the action of the Board of Adjustment under the substantial evidence rule he must lose. He attempts to demonstrate that the case is not one in which such a test would be proper, but, instead, is essentially one in which the action of the Board of Adjustment was without the scope of its jurisdiction, and was patently illegal or without authority of law, for which reason its action should be avoided and set aside.

■ The City of Arlington being a Home Rule city under V.A.T.S. Title 28, "Cities, Towns and Villages", Chapter 13, "Home Rule", Art. 1165 et seq., we may examine the ordinance under which the action of which complaint is made in the same manner and by the same tests to be made were it a statute enacted by the legislature. Unless prohibited by statute, and no such prohibition is applicable in the instant situation, the City of Arlington is as fully empowered to legislate and govern within its own city limits as the state could in the same area had the municipality never been incorporated. Stated another way, the City of Arlington had the authority to do what its Board of Adjustment did do in the instant situation if the Legislature of the State of Texas would have had the authority to have done the same thing absent the Home Rule Amendment. Therefore, if the City of Arlington, having this power, did delegate such to the City's Board of Adjustment in its place and stead, under authority of legitimate ordinance, the Board's action was jurisdictionally proper.

In City of San Angelo v. Boehme Bakery, 1945, 144 Tex. 281, 190 S.W.2d 67, the court said that the San Angelo Board of Adjustment had the authority, under the city's ordinance, to permit an extension of a nonconforming use. San Angelo was a Home Rule city. A careful reading of the ordinance in question reveals that it expressly authorized the Board to permit an extension of a nonconforming use. It is the contention of White, in the instant case, that the ordinance of the City of Arlington neither expressly permitted an extension of the nonconforming trailer park use nor was such permitted by any necessary implication of the ordinance.

White, obviously implying that no other section of the zoning ordinance needs be considered, refers to its Article 12, sections 1 to 5, inclusive, wherein consideration is given to the use to which property is devoted at and prior to the time the ordinance was enacted, and provision made for a continuation of such use even though nonconforming within the provisions elsewhere therein stated.

Conceding that said Article 12, of itself, does not contain any provisions which either expressly or impliedly authorizes any extension of the nonconforming use therein contemplated, the City of Arlington directs our attention to Article 4 of said zoning ordinance under which uses denominated "Conditional Uses" are considered. Thereunder is provided that the Zoning Board of Adjustment of the City of Arlington may, after public notice and hearing, grant a permit applying for what is considered as a "conditional use", subject to the right of the Board to impose such conditions it might deem essential to insure that the use is consistent with the spirit, purpose and intent of the ordinance, will not substantially and permanently injure the appropriate use of neighboring property, and which will substantially serve the public convenience and welfare.

One of the types of "conditional uses" specifically dealt with under Article 4 is that of "Trailer Park". It is provided by Article 4, under its first section, that such use may be permitted by the Zoning Board of Adjustment in a district where not otherwise permitted (in view of other provisions of the ordinance) in accordance with procedure specified under its second section. The second section provides that when an application is made to the Board of Adjustment for a "conditional use" the application shall be referred to the Planning and Zoning Commission for its investigation as to the manner in which the proposed location and character of use will effect the city's master plan, after which said Commission shall report the results of its study of the application to the Board for action,

if any it desires to take. Further provisions of the section confer the authority upon the Board to grant the permit for the "conditional use" under such appropriate conditions as it might deem proper to impose, as heretofore mentioned in the paragraph of this opinion next preceding.

■ Under authority of City of San Angelo v. Boehme Bakery, 1945, 144 Tex. 281, 190 S.W.2d 67, we are of the opinion that the ordinance of the City of Arlington lawfully entitled and expressly authorized its Board of Adjustment to grant the permit which substantially amounted to an extension of the nonconforming use to the lot adjacent to Coleman's property. If, as White contends, the language of the Supreme Court on the matter of the city's power in this regard was dicta, such was not the case in the Court of Civil Appeals (185 S.W.2d 601) where it was a part of that court's decision upon which it rendered judgment. The Supreme Court expressly agreed with that part of the lower court's opinion. It is true that the ordinance under consideration in this case treats the permission authorized to be granted as a "conditional use", but a proper construction of the matter is that said permission was actually for an extension of the existing lawful nonconforming use subject to conditions imposed, or which could be imposed, upon the nonconforming use as so extended. Simply stated, the ordinance authorizes the Board to impose a degree of control upon the use of the property to which the nonconforming use is extended which it had no authority to impose upon the nonconforming use being made of the other property.

We furthermore hold that the ordinance in its Article 4 provides an adequate legislative standard upon which the Board of Adjustment could base its decision.

■ As applied to this case the ordinance contains no provision for any form of quasi judicial action by the Planning and Zoning Commission of the City of Arlington. Therefore White could not have been

prejudiced by the manner in which said commission conducted its investigation in its decision as to what recommendation it might make to the Board of Adjustment. White's point of error complaining because said commission conducted no hearing on the merits of his contentions is overruled.

■ We next consider White's complaint because he was not given sufficient advance notice of the meeting of the Board of Adjustment on November 21, 1961, at which it took action approving the application of Coleman to use Lot 19 for trailer park purposes. Notice of the hearing had been published in a newspaper of general circulation in the City of Arlington. Letters of notification were mailed to all interested parties, including White, six days before the date set for the hearing, although he did not receive the letter until several days later. In any event White did appear at the hearing with his attorney and was availed the opportunity to introduce evidence. The trial court, as the trier of fact, is presumed to have determined upon the conflicting evidence that White made no request for continuance or postponement of the hearing, nor complaint that he had insufficient notice of the hearing.

It is well settled that a party's appearance in a civil action amounts to a waiver of service or of any irregularity therein. We know of no reason why the same rule should not be held to apply to hearings before an administrative body such as a board of adjustment for a municipality. The case cited by White to support the point presented does not hold otherwise. City of San Antonio v. Pope, 1961 (Tex.Civ.App., Eastland), 351 S.W.2d 269. In that case the complainants had neither received notice nor been present upon the administrative hearing where action complained of was taken. Cases from other states which hold that appearance before bodies similar to our boards of adjustment amounts to waiver of service or irregularity therein include Hopkins v. MacCulloch, 1939, 35 Cal.App.2d 442, 95 P.2d 950; Gerling v. Board of Zoning Appeals of Town of Clay, 1957, 11 Misc.2d 84, 167 N.Y.S.2d 358; and Perrier v. Board of Appeals of City of Pawtucket, 1957, 86 R.I. 138, 134 A.2d 141. Point of error presenting the contention is overruled.

■ Finally we consider White's contention that the action of the Board of Adjustment constituted "spot" zoning. We take notice that the zoning or re-zoning of Lot 19 was not at issue in the case, the question involving a "conditional use" of such property at variance with its zoning. "Spot" zoning was not involved in this case. Moody v. City of University Park, 1955 (Tex.Civ.App., Dallas), 278 S.W.2d 912, 923, writ ref. n. r. e. Assuming, arguendo, that the action of the Board of Adjustment did amount to "spot" zoning, it is noticed that the burden of proof would have been upon White to establish that the "zoning" authority acted unreasonably, arbitrarily, abused its discretion, and that the action did not subserve the general welfare. Weaver v. Ham, 1950, 149 Tex. 309, 232 S.W.2d 704. As to this we believe the record shows that White did not discharge his burden of proof, and that in any event the trial court was entitled, under the evidence, to refuse to find that the Board's action was of such reprehensible character.

Judgment is affirmed.