**CITY OF SAN ANTONIO et al., Appellants,**

**v.**

**C. D. J. ENTERPRISES, INC., et al.,**
**Appellees.**

**No. 11391.**

Court of Civil Appeals of Texas.

Austin.

April 20, 1966.

Rehearing Denied May 11, 1966.

**574**

Sam S. Wolf, City Atty., San Antonio, Wm. A. Olson, Austin, Rix Rutland, San Antonio, for appellants.

Cofer, Cofer & Hearne, Douglass D. Hearne, Waggoner Carr, Atty. Gen., Hawthorne Phillips, First Asst. Atty. Gen., T. B. Wright, Executive Asst. Atty. Gen., J. Arthur Sandlin, George C. Black, Jr., Asst. Attys. Gen., Austin, for appellees.

PHILLIPS, Justice.

This is an appeal from the judgment of the trial court upholding an order of the Texas Water Pollution Control Board. The order granted a permit to C. D. J. Enterprises, Inc., one of the appellees here, authorizing it to discharge treated municipal sewage effluent into a tributary of the Salado Creek in Bexar County, Texas. The plaintiffs below, and the appellants here, are the City of San Antonio and Albert A. Math and his wife who are property owners alongside the proposed sewage treatment plant.

In June of 1964, the appellee C. D. J. Enterprises, Inc., made application to the Texas Water Pollution Control Board for a permit to discharge an average not to exceed 696,000 gallons per day of treated municipal sewage effluent into a tributary of Salado Creek on the outskirts of the City of San Antonio. This application was made pursuant to the terms of Art. 7621d, Vernon's Civil Statutes.

The application was first considered at a regular meeting of the Board held in September, 1964. The City of San Antonio protested the application at this meeting.

The Board took the application for permit under advisement pending approval of the design and plans of the proposed treatment plant by the Texas State Department of Health.

The Health Department approved the design and plans subject to certain conditions and notice of this approval was conveyed to the Board.

At another meeting of the Board held in January of 1965, the application was again brought up for consideration and after further protests by San Antonio and also by appellants, Maths, the application was granted.

The City of San Antonio and Albert A. Math and wife brought separate suits to

set aside the order of the Board granting the permit and, on motion of the Board, the causes were consolidated for trial.

The case went to trial in June of 1965 and was tried before the court without a jury. After a trial lasting four days, the court rendered judgment that the order of the Board granting the permit in question was valid and supported by substantial evidence. It is from this judgment that appellants have appealed to this Court.

We affirm the judgment of the trial court.

Appellant City of San Antonio is before this Court with two points of error, namely, the error of the trial court in holding that the order of the Texas Water Pollution Control Board granting the permit in question was supported by substantial evidence; the error of the trial court in finding and in holding that the construction, location, and design plants of the proposed sewage treatment plant of the appellee, are pertinent only insofar as they may control the point of discharge of effluent.

We overrule these points.

For the purpose of this opinion we shall discuss appellant San Antonio's second point of error first. We hold that under this Court's opinion in Corder v. State Water Pollution Control Board of the State of Texas et al, Tex.Civ.App., 391 S.W.2d 83, writ ref., n. r. e., the trial court's judgment in respect thereto is correct. In Corder, we held that the Board had no jurisdiction over plant design; that design was within the province of the Health Department, citing Article 4477–1, Section 12, Vernon's Civil Statutes.

A review of the extensive record before us discloses that the major part of the testimony presented by the City of San Antonio attacks the design of the proposed plant in an effort to demonstrate that its design is inadequate for its purpose. This evidence is not pertinent here.

The Texas Water Pollution Control Board was set up by the Legislature to control effluent into our streams, rivers and lakes. Article 7621d, Sec. 4(b) provides:

"Each such permit shall set forth the conditions upon which it is issued by the Board, including, but without limiting such conditions to, the duration of such permit, the maximum quantity of waste which may be discharged thereunder at any time and from time to time, and the quality, purity and character of waste which may be discharged thereunder."

If the design of the treatment plant had been intended to be a condition before the Board could issue a permit, such a condition would have been included by the Legislature. The failure to provide such a condition, together with the statutory mandate placing such a condition of approval with the Health Department, manifests the legislative intent in this regard.

The Board is primarily concerned with the pollution of the waters of the State. Expert witnesses testified that the efficiency of a treatment plant is primarily dependent upon its operation and maintenance. It is obvious from the testimony before the trial court and from the arguments and briefs of the attorneys for appellants, that they are concerned that the plant will not be maintained or operated properly. This question is not before this Court at this time. The Board controls the operational efficiency of the plant through the conditions that it imposes on the applicant's permit. In this case this was done by imposing a certain measurable standard on the quality of effluent which is not to exceed 20 parts per million of Biochemical Oxygen Demand; 20 parts per million of total suspended solids; continuously chlorinated to a residual of not less than 0.5 parts per million of chlorine after 20 minutes contact time. The quantity of discharge is limited to an average not to exceed 696,000 gallons per day. In addition, the permit provided for standards of maintenance of the proposed treatment

plant; requirements that records must be kept and samples taken; a requirement that operational reports must be submitted to the Health Department.

The evidence disclosed that the very best method of disposing of sewage is through an area wide collection system of sewer lines such as the San Antonio municipal sewer system; however the evidence is conclusive that a tie-in with the San Antonio area wide collection system, is for all practical purposes, impossible at this time. It is agreed that the second best method of collecting sewage is by a treatment plant of the general type before us. The Board recognized the fact that it may be possible in the future for appellee, C. D. J. Enterprises, Inc., to tie into an area wide collection system and one of the conditions in the permit is that if such a tie-in should become possible in the future, discharge must be made into such system, if such is feasible, without respect to loss of investment. The proposed treatment plant will be constructed in a matter which will allow integration into an area wide system. The plant is also being constructed so that additional units may be added as required in order to process additional sewage.

■ This Court must presume that the Board will follow its mandate in supervising this plant and that the appellee C. D. J. Enterprises, Inc. will fulfill the requirements of its permit.

The appellant City of San Antonio's first point of error, stated above, is that of the District Court in finding and holding that the order of the Board granting the permit in question was supported by substantial evidence.

We overrule this point.

■ In Corder we held that the substantial evidence rule governs the trial of cases involving permits for the Board. There is no need here to go into detail concerning the evidence presented on this point. Suffice to say that the evidence is practically uncontradicted to the effect that if the standard of effluent upon which the permit is conditioned and which is described above, is maintained, that the effluent emitted into the tributary of Salado Creek would be of a very high quality and would not raise the Biochemical Oxygen Demand or solids in any appreciable amount. In other words, there would not be any appreciable pollution to the tributary.

Appellants Albert A. Math and wife are before us on three points of error, briefed together, and being that of the trial court in granting the judgment complained of in that there is no evidence that the Maths were mailed or served with statutory notice by appellee of their hearing on September 24, 1964; because there is no evidence that the Maths were mailed or served with statutory notice of the Board's meeting or hearing held on January 28, 1965; because there is no evidence that all owners of land in the immediate vicinity of the point of discharge were served or mailed statutory notice of the Board's hearing on September 24, 1964.

We overrule these points.

■ The evidence discloses that while the Maths did not attend the meeting of the Board held in September of 1964, they did attend the meeting of the Board held in January of 1965 and were allowed to present testimony of their opposition to the order granting the permit. We hold that in view of the fact that they presented themselves at the hearing, that the statutory notice is waived. See White v. Zoning Board of Adjustment of Arlington, Tex. Civ.App., 363 S.W.2d 955, writ ref., n. r. e.

Since there is no complaint from other alleged parties who received no notice, appellants Maths are not affected thereby and have no standing here to complain for them.

We affirm the judgment of the trial court.

Affirmed.