Charles G. HOOKS, Jr., et ux.,
Appellants,

v.

TEXAS DEPARTMENT OF WATER
RESOURCES, et al., Appellees.

No. 13209.

Court of Appeals of Texas,
Austin.

Jan. 18, 1983.

Rehearing Denied Feb. 9, 1983.

L.A. Greene, Jr., Houston, for appellants.

Mark White, Atty. Gen., Brian E. Berwick, Asst. Atty. Gen., Austin, for Texas Dept. of Water Resources.

Earl L. Yeakel, III, Kammerman, Yeakel & Overstreet, Austin, for George H. Musterman, Inc.

Before PHILLIPS, C.J., and SHANNON and POWERS, JJ.

POWERS, Justice.

## I

Charles and Irma Hooks, appellants, seek by appeal to this Court further judicial review of an order issued by the Texas Water Commission, the district court having affirmed the Commission's order. Texas Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat.Ann. art. 6252–13a, §§ 19, 20 (Supp.1982). We shall hereafter refer to appellants by their surname "Hooks."

The administrative order of which Hooks complains issues to appellee George H. Musterman, Inc. (Musterman) a waste discharge permit as authorized by the provisions of Tex. Water Code Ann. § 26.027(a) (Supp. 1982). We will uphold the order. The following narrative will assist in understanding our resolution of the appeal.

Musterman planned to build a new residential community 24 miles northwest of the downtown area of Houston, Texas, intending that the new community accommodate about 7,500 people. To effectuate the plan, Musterman applied to the Commission for a permit to treat and discharge the community's sewage into Willow Creek. The waters of Willow Creek ultimately discharge into Lake Houston via Spring Creek and the West Fork of the San Jacinto River. Hooks owns land on Willow Creek, which land lies downstream from the proposed discharge point. The discharge from the sewage treatment plant will amount to a quantity of effluent between 750,000 and 2,250,000 gallons per day.

The Commission directed that a hearing be held on Musterman's application. The first hearing was not completed, however, and following notice by publication, a hearing was set for February 1, 1978 in Houston. It was duly held. Hooks appeared at the hearing, as he had at the first, for the purpose of opposing Musterman's application. Hooks was designated a party to the agency proceedings and actively participated in the hearing before it closed. Subsequently, the hearing examiner determined *sua sponte* to reopen the evidence for another hearing, which was duly held in Houston on May 2, 1978, at which time additional evidence was received. Again, Hooks actively participated. On May 6, 1978, the hearing examiner rendered his proposal for decision.

Hearings were thereafter conducted before the full Commission in Austin, Texas on June 6, 1978 and July 10, 1978. Hooks participated in the hearings. The Commission adopted some of the findings of fact proposed by Musterman and some proposed by Hooks, and made minor changes in a proposed order and permit. On July 24, 1978 and again on August 15, 1978, the Commission approved its final order granting the permit to Musterman. Hooks filed a motion for rehearing which the Commission overruled on September 25, 1978.

On October 25, 1978, Hooks filed in a Travis County district court his petition for judicial review of the Commission's final order. The district court, by a final judgment dated October 12, 1979, affirmed the Commission's order. Hooks appealed from such judgment to this Court, based upon various contentions of error which will be set out hereafter.

On July 2, 1980, this Court vacated the district court's judgment and dismissed the appeal, holding that the district court was without subject-matter jurisdiction of the controversy because Hooks lacked "standing" or a "justiciable interest" because the record failed to show that Hooks was "aggrieved" or "affected" within the meaning of APTRA § 19(a) and Tex.Water Code § 5.351. *See Hooks v. Texas Dept. of Water Resources,* 602 S.W.2d 389 (Tex.Civ. App.1980).[1]

Hooks appealed to the Supreme Court of Texas. On February 11, 1981, that Court

---

1. Because appellants necessarily sought further judicial review in this Court, on appeal from the district court decision, our jurisdiction in

reversed the judgment of this Court and remanded the appeal, noting that

> [t]he court of civil appeals raised the question of standing *sua sponte.* Standing was never raised, plead [sic], briefed, argued, nor urged by the parties. It appeared for the first time in the opinion of the court of civil appeals. The court of civil appeals erred in holding that the Hooks lacked standing.

*Hooks v. Texas Dept. of Water Resources,* 611 S.W.2d 417, 419 (Tex.1981). As we had done, the Court proceeded to consider on the merits the issue of whether Hooks possessed the "standing" or "justiciable interest" essential to his power to invoke the district court's jurisdiction under the relevant statutes which create that power and the district court's special jurisdiction to review administrative agency actions on less than constitutional grounds. The Court held that Hooks could and did properly invoke the district court's jurisdiction and remanded the appeal to this Court. *Cf., Texas Industrial Traffic League v. Railroad Commission of Texas,* 633 S.W.2d 821 (Tex. 1982), *Roskey v. Texas Health Facilities Commission,* 639 S.W.2d 302 (Tex.1982), (each of which rested upon the rather startling premise that "standing" and "justiciable interest" are not jurisdictional requirements whose absence is fundamental error, but rather issues which are "waived" if not properly raised in the trial court.)

We are, therefore, required now to consider and determine the points of error which Hooks brought originally to this Court in his appeal from the district court judgment.

## II

### A

In a brief filed after remand of the appeal to this Court, Hooks has considerably altered and rearranged his points of error and enlarged and made more specific his arguments thereunder. We shall discuss initially Hooks' second point of error, which reads as follows:

> The trial court erred in affirming an agency decision based upon inadequate and improper findings of fact because:
> a. The findings cannot be supported without reliance on Hearsay. (Musterman Appendix 124).
> b. The findings are not supported by substantial evidence. (Musterman Appendix 124.)
> c. The findings do not cover all the required statutory considerations, and are not relevant to any specific statutory or administrative guide. (Musterman Appendix 124).
> d. The findings are not sufficient to support the specific standards, requirements, conditions and parameters of the proposed permit. (Musterman Appendix 124, 132, 136, 140, 142, and 143).
> e. The findings do not support the conclusions of law adopted. (Musterman Appendix 124 and 128).

Hooks' reference to the "Musterman Appendix" are references to an appendix which appellee Musterman filed with its brief on appeal. It consists of photocopies of agency documents which Musterman has bound together and paginated.

Under Hooks' second point of error, he argues that the Commission's findings of fact, upon which rests the Commission's final order, are inadequate for that purpose, or invalid in and of themselves, for several reasons: (1) they depend upon hearsay evidence; (2) they are not supported by substantial evidence; (3) they do not address all the requisite statutory considerations pertaining to the issuance of waste dis-

---

the case under APTRA § 20 was necessarily *appellate.* We were therefore required to determine our jurisdiction over the appeal whether or not the issue was raised by a party. *Newton v. Barnes,* 150 S.W.2d 72 (Tex.Civ. App.1941, writ ref'd). Under APTRA § 20, as in the case of our ordinary appellate jurisdiction, our power to hear and determine an appeal (our "jurisdiction") depends upon the jur-

isdiction of the trial court under APTRA § 19, and if that court did not have jurisdiction of the subject matter of the administrative appeal, our jurisdiction extends only so far as to permit us to reverse the judgment of the trial court, remand the cause, and order that it be dismissed; we may not purport to adjudicate the merits of the appeal. *Fruit Dispatch Co. v. Rainey,* 111 Tex. 266, 232 S.W. 281 (1921).

charge permits, and they are not relevant to specific "guides" mandated by statute or administrative rule; (4) they are insufficient to support the specific standards, conditions, requirements, and parameters of the permit issued to Musterman; and (5) they do not support the conclusions of law made by the Commission. Hooks' specific contentions are as follows:

1. The Commission's findings of fact numbered 1, 9, 10, 17, 18, 19, 24, 26, 27, 29, 30, 32, 33, and 36 are supported "only by hearsay." (We note that the record of agency proceedings reflects that the Commission did not make the last seven findings of fact of which Hooks complains.)

2. There is no evidence to support finding of fact number 1. (We note that Hooks totally mischaracterizes the tenor and effect of this finding of fact.)

3. There is no evidence to support findings of fact numbered 14 and 22(6) because they are based upon opinions which, in turn, rest solely upon hearsay and were thus made by the Commission in the absence of any evidence to support them.

4. There is no evidence to support the Commission's adoption and promulgation of the specific conditions which it made part of the permit issued to Musterman, such as (a) the biochemical oxygen demand and pH limitations of the effluent to be discharged; (b) the monitoring provisions of the permit; and (c) the duration of the permit, that is, the duration of Musterman's authority to discharge treated effluent into Willow Creek.

5. There are no findings of fact to the effect that it was *reasonable and necessary* to adopt and promulgate the specific conditions, a contention which Hooks directs at those conditions which the permit *must* contain under the mandatory provisions of Tex. Water Code § 26.029(a) (Supp.1982) and

those which the Commission imposed on its own initiative.[2]

6. The findings of fact made by the Commission fail to comply with eleven "rules" or "tests" which previous judicial decisions, cited by Hooks, have adopted to determine whether an administrative agency's findings of fact are sufficient to support its final order.

In this second point of error, Hooks aggregates *all* his contentions of error directed at the *findings of fact* made by the Commission, which ostensibly support its final order. One observes immediately that these various contentions of error fall into two fundamentally different categories: first, contentions that the *evidence adduced* in the agency hearings is insufficient to support the Commission's findings of fact; second, contentions that the findings of fact which were made, whether or not supported by substantial evidence, are insufficient *as stated and in their very nature* to support the Commission's final order.

Hooks' attack upon the sufficiency of the underlying evidence, as distinguished from his attack upon the sufficiency of the findings of fact to support the final order, depends upon the hearsay argument which constitutes a large part of his first point of error discussed below; that is to say, if one does not consider the evidence Hooks characterizes as "hearsay," substantial evidence does not remain to support the findings of fact. Much of his argument under his second point of error is therefore repetitious of his first point of error, which contends that the "agency decision," rather than the findings of fact upon which it rests, is not supported by substantial evidence.

■ We hold Hooks' second point of error to be in violation of Tex.R.Civ.P.Ann.

2. Tex.Water Code § 26.029(a) requires that the permit state the following conditions: duration of the permit, the location of the point of discharge, maximum quantity of waste permitted to be discharged at any time and from time to time, character and quality of waste that may be discharged, and any monitoring and reporting requirements prescribed by the Commission. In Hooks' brief, he singles out the bio-

chemical oxygen demand and the pH quantity set by the Commission (which relate to the "character and quality" of the waste), the quantity of waste, and the duration of the permit. However, he refers to these only as "examples" of conditions which the Commission imposed without having found they were "reasonable and necessary."

418(d) (Supp.1982). The purpose of this rule is to give notice to opposing parties and the appellate court of those actions of the trial court, or administrative tribunal, which appellant contends are erroneous, and the legal grounds for such contentions, in order that the opposing party may respond thereto as effectively as possible and that the attention of the appellate court may be drawn thereto so that the respective contentions may be considered and addressed in a rational manner. When many contentions of error are combined in a single point of error, as they are in Hooks' second point of error, the opposing party may not receive sufficient notice of a particular contention of error. Moreover, Hooks' presentation of his contentions in this form has forced this Court to devote unnecessary time and effort to what is properly the task of the advocates, that is, to separate and organize the contentions of error, and any replies thereto, in order that we may coherently and appropriately evaluate them. Nevertheless, we observe that in most reported cases wherein appellants have brought multifarious points of error, some more egregious than those before us, appellate courts will usually assume the burden foisted upon them and address the issues as diligently and logically as possible "in the interest of justice," provided the court and the opposing party may adequately discern the legal issues raised. Tex. R.Civ.P.Ann. 422 (1967); *Townplace Homeowners' Ass'n v. McMahon,* 594 S.W.2d 172 (Tex.Civ.App.1980, writ ref'd n.r.e.).

However, Hooks' second point of error is not only multifarious, that is, it does not merely specify many different actions by the agency asserted to be erroneous, or many different grounds for these assertions, but it also fails to allege certain errors with sufficient specificity to enable this court to consider them "in the interest of justice." For example, Hooks sets out what he contends are eleven "tests" for evaluating the sufficiency of findings of fact made by administrative agencies, which "tests" he has culled from several reported judicial decisions. He does not, however, identify any *particular* findings of fact made by the Commission in this case which must be re-

jected because they fail to meet any particular "test." He merely asserts that "[w]hen the Findings of Fact contained in the Hearing Commission [sic] Report (as adopted by the Commission in its decision) are viewed in terms of those requirements, the decision fails to satisfy almost every one of those tests." If we assume these "tests" to be applicable to the case before us, it is improper for us to search among the agency's findings of fact for violations of those "tests" and we may not consider any points of error which, as here, amount to nothing more than abstract propositions of law. *Ratcliff v. Sherman,* 592 S.W.2d 81, 82 (Tex. Civ.App.1980, no writ). We may, accordingly, address only those contentions of error made by Hooks which are directed at specific findings of fact.

### B

■ Nevertheless, before we may consider any of Hooks' contentions that a particular finding of fact is erroneous for a specified reason, or his contention that a particular finding of fact was required to support the Commissions' order but was not made by the agency, it must appear that his motion for rehearing in the agency also stated these contentions of error with the requisite degree of specificity; otherwise, such contentions of error are not presented for judicial review of the Commission's order. When we examine Hooks' motion for rehearing in the agency, we find that he makes numerous complaints that the Commission's findings are without substantial evidence to support them. These will be discussed below in connection with Hooks' second point of error. He also directed three assignments of error, in his motion for rehearing, at *other* defects in the agency's findings of fact or the agency's failure to make findings of fact. They are:

32. The Commission erred in adopting findings which are not relevant to any specific statute or administrative guidelines or standards or rules promulgated to govern determination of these issues.

33. The Commission erred in adopting an order without sufficient findings

to support the specific standards, parameters and requirements imposed by the permit.

34. The Commission erred in adopting findings or an order which failed to make explicit findings for each significant condition in the permit.

We hold that these general complaints, directed at findings of fact which the Commission made or it omitted to make, have not been stated with sufficient particularity to preserve them for judicial review.

In *United Savings Ass'n of Texas v. Vandygriff*, 594 S.W.2d 163, 167–70 (Tex.Civ. App.1980, writ ref'd n.r.e.), we held that a point of error was waived because appellant's contention of error, as set forth in his motion for rehearing in the agency, was phrased in terms too general to call the agency's attention to the claim in order that any error might be corrected. In that case, the point of error on appeal was to the effect that the agency's order did not

> contain the requisite concise and explicit statement of underlying facts supporting its ultimate findings and conclusions as mandated by Section 11.11 of the Texas Savings and Loan Act and Section 16(b) of the Administrative Procedure Act.

Appellant was held to have waived his contention of error where his motion for rehearing in the agency read as follows:

> The Commissioner erred in failing to meet the requirements of Section 11.11 of the Texas Savings and Loan Act and Section 16(b) of the Administrative Procedure Act of Texas.

We noted in *United Savings* that both Section 11.11 of the Texas Savings and Loan Act and Section 16(b) of APTRA imposed upon the agency several different requirements; and "[f]rom mere reference to the statutes, the Commissioner could not be expected, from this generality, to discover the error and correct his mistake, if any, or to prepare a justification of it." Therefore, in *United Savings,* the motion for rehearing was insufficiently specific because it failed to state with particularity the legal *basis* of the error which appellant assigned in his motion. An analogous defect is presented in the present case. Even if we assume Hooks' motion for rehearing states with sufficient particularity the legal *basis* of his three attacks upon the findings of fact which purport to support the final order of the agency, no assignment of error is directed at any particular finding of fact made or omitted by the agency. Thus, the result is the same whether the motion for rehearing fails to specify either the legal *basis* for the claim of error or the particular *finding* complained of: in either case, the agency is deprived of an opportunity to discover and correct the error, if any, or articulate a justification for its action.

■ The responsibility for applying the relevant statutory provisions to the facts of a particular case is given in the first instance to the Commission. "A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *Unemployment Compensation Comm'n. v. Aragan,* 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946). "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objections made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952). In order that the Commission might correct its errors or explain its position with regard to the findings of fact in the present case, Hooks was required to designate with particularity not only the legal basis for his contentions of error, but also the specific findings of fact about which he complained, whether made or omitted to be made by the agency. Because Hooks' motion for rehearing failed to connect any claim of error with any particular finding of fact, we must hold that he waived any contention of error with regard to any findings of fact which the agency made or omitted to make. His second point of error is therefore overruled.

### III

### A

We turn then to Hooks' first point of error on appeal to this Court, which is stated as follows:

> The agency decision is not supported by substantial evidence. The evidence relied on is inadmissible hearsay, or not based on personal knowledge, or upon improper reliance on official (judicial) notice, or opinions based upon an opinion. [citations to statement of facts omitted]

One observes immediately that the contentions made by Hooks under this first point of error are directed at the "agency decision" and not at findings of fact made or omitted to be made by the Commission, and consist of a charge that the "agency decision" is without substantial evidence to support it because "the evidence relied on" could not properly be considered by the Commission. The argument in Hooks' brief addresses several different matters in this connection, which we will summarize as follows:

1. The opinion testimony of an expert witness may not permissibly be utilized as a vehicle to place in evidence "facts" upon which the expert relied in forming his opinion unless he has personal knowledge of these "facts" or unless they are independently established by other evidence admitted in the case before the agency. *See Moore v. Grantham,* 599 S.W.2d 287 (Tex. 1980). In this argument, Hooks attacks the testimony of five expert witnesses who testified in the agency hearings, stating that they "were allowed to testify from the reports and work of others" and "relied heavily upon facts not otherwise in evidence and not independently introduced in evidence."

2. Hooks also complains that the "agency decision" rests upon the Commission's utilization of its "expertise" to arrive at decisions which could properly be based solely upon evidence adduced, pointing out that "agency expertise cannot substitute for proof, but must find ultimate support upon evidence taken at the hearing or upon facts officially noticied [sic] upon the record."

3. Finally, Hooks complains that the hearings examiner improperly admitted into evidence, or purported improperly to take official notice of, fourteen documents which Hooks specifies with particularity. These documents, Hooks contends, "were produced outside of court [sic], not based on personal knowledge, constituted hearsay and were admitted by the Examiner over proper objections," and as to those matters of which the examiner purported to take official notice, they were required to be established by evidence.

While Hooks' argument under his first point of error does elaborately set forth the legal basis of his claims of error in the three categories mentioned above, he does not, with one exception, connect any particular legal basis with any particular finding of fact or conclusion of law upon which the final order of the Commission rests. Rather, Hooks makes the most general claim possible: "[t]he *agency decision* is not supported by substantial evidence." (emphasis added) The single exception referred to lies in Hooks' contention that there was

> no evidence to establish that notice of the hearing had been published as required by law or to support the finding about publication in all counties where the commission believes persons affected may reside, nor to establish that the paper was one of general circulation.

One may easily ascertain that these contentions in Hooks' brief refer to the Commission's finding of fact number 17 and conclusion of law number 2, which read as follows:

> 17. Notice of the adjudicative hearing was published on December 29, 1977 in *The Houston Chronicle,* a newspaper regularly published or circulated in Harris County, Texas.

> \*    \*    \*    \*    \*    \*

> 2. Proper and timely notice of the public hearing was issued in accordance with Section 26.022 of the *Texas Water Code,* as amended, and the applicable provisions of the *Rules of Procedure* of the Texas Water Commission.

Aside from this particular complaint, Hooks' first point of error and the argu-

ment thereunder do not adequately present a substantial evidence point, because they are too general to be considered. Tex.R. Civ.P.Ann. 418 (Supp.1982); *Slayton v. White,* 487 S.W.2d 204, 205 (Tex.Civ.App. 1972, writ ref'd n.r.e.).

### B

When we orchestrate Hooks' argument under his second point of error with that under his first point, however, we are able to ascertain with some certainty that he does complain of a lack of substantial evidence to support some of the Commission's findings of fact and some specific provisions of the permit issued to Musterman. Once again, however, when we examine Hooks' motion for rehearing in the agency, we find that he generally did not specify his claims of error as to these matters. The material portions of his motion for rehearing read as follows:

24. The Commission erred in adopting certain of the examiner's findings and conclusions because said findings and conclusions are based in whole or in part on hearsay or other improperly admitted evidence.

25. The Commission erred in adopting the findings of the Hearing Examiner because said findings are against the great weight and preponderance of the evidence or they are not supported by any evidence or they are supported only by insufficient evidence.

26. The Commission erred in adopting the Hearing Examiner's findings because said findings are not supported by substantial evidence.

27. The Commission erred in adopting proposed findings of fact Nos. 4, 5, and 6,

submitted by George H. Musterman, Inc. because said findings are not supported by any evidence and they are supported only by insufficient evidence or they are against the great weight and preponderance of the evidence.

28. The Commission erred in adopting proposed findings of fact nos. 4, 5, and 6 submitted by George H. Musterman, Inc. because said proposed findings are not supported by substantial evidence.

29. The Commission erred in adopting the findings of the Examiner and the proposed findings nos. 4, 5, and 6 of George H. Musterman, Inc. because of errors occurring during the course of the hearings which have been specifically objected to and assigned as error above.

\* \* \* \* \* \*

31. The Commission erred in adopting findings which were based on hearsay or other inadmissible evidence.

32. The Commission erred in adopting findings which are not supported by substantial evidence in adopting the Order entered in this case on August 15, 1978.

With the exception of paragraphs 27, 28, and 29 of Hooks' motion for rehearing, claiming that the Commission erred in adopting Musterman's proposed findings of fact numbered 4, 5, and 6, the assignments of error contained in the motion are manifestly inadequate to preserve any contention that any specific findings of fact made by the agency are not supported by substantial evidence; with those three exceptions the motion does not connect a want of substantial evidence with any particular finding and any error in that regard was waived. *United Savings Ass'n. of Texas v. Vandygriff, supra.*[3]

---

**3.** We are not required to repeat in this opinion the analysis developed in *United Savings* to illustrate the reasons for our holding that specific assignments of error must be included in the motion for rehearing in order to invoke judicial review of those assignments of error. We will, however, point out that one should not confuse the general standard for judicial review of evidentiary matters, that is, "review under the substantial evidence rule," as mandated by APTRA § 19(e), with the several particular categories of error in the administrative proceeding which may require reversal of an agency's

final order because the agency's findings, inferences, conclusions, or decisions are:

(1) *in violation of constitutional or statutory provisions;*

(2) *in excess of the statutory authority of the agency;*

(3) *made upon unlawful procedure;*

(4) *affected by other error of law;*

(5) *not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole;* or

The requirement of reasonable specificity in a motion for rehearing, judged by the purpose which the motion is intended to serve,

> is not an empty formality. It subserves the same considerations fostered by the companion rule that contentions to be urged on appellate review of judicial proceedings be properly raised and preserved in the trial court. Not the least of those considerations is the opportunity, through precise identification of the errors alleged, for administrative reexamination and correction prior to judicial intervention in the regulatory process. We have long admonished that points not subjected to agency scrutiny during administrative proceedings will not normally be entertained on judicial review. *That admonition, we have held, extends to claims that administrative findings are unsupported by substantial evidence.*

*D.C. Transit System, Inc. v. Washington Metropolitan Area Transit Comm'n.*, 466 F.2d 394, 413–14 (D.C.Cir.1972). We hold that Hooks' contentions that the Commission's findings and decision were not supported by substantial evidence are waived, save as to those findings which he specifically identified in his motion for rehearing as being infected by that defect, and to these we now turn.

### C

Assuming Hooks did *preserve* a substantial evidence contention of error with regard to the Commission's adoption of Musterman's proposed findings of fact numbered 4, 5, and 6, he does not, by point of error or argument in his brief, specifically contest the sufficiency of the evidence with regard to Musterman's proposed findings of fact numbered 4 and 5. Any complaint in that respect is therefore waived for Hooks' failure to bring his contention forward to this Court, notwithstanding that he had preserved the point for judicial review in his motion for rehearing in the Commission. And when we examine Hooks' contention of error with regard to the Commission's adoption of Musterman's proposed finding of fact number 6, we find any error harmless, if error there was. This proposed finding of fact, as adopted by the Commission, reads as follows: "The plans and specifications for the sewage treatment plant have been submitted to the State Health Department and approved by the agency." This Court has previously held that the failure of the Water Pollution Control Board, a predecessor of present agencies, to consider the adequacy of the design of a proposed treatment plant will not invalidate a permit issued for discharges from the plant. *City of San Antonio v. C.D.J. Enterprises,* 402 S.W.2d 573, 575 (Tex.Civ.App.1966, writ ref'd n.r.e.). Indeed, we have said that the standards for constructing the treatment plant were not within the jurisdiction of the Board, such being within the province of the State Health Department. *Id.* At the time Musterman's permit was granted, Texas Water Code § 26.034 required submission of plans and specifications for treatment plants to the Texas Water Development Board for evaluation and approval if they conformed to waste discharge requirements and water quality standards, but this section did not apply to "those public sewage disposal sys-

---

(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. [emphasis added]

In *United Savings,* for example, we stated as follows:

> In an administrative review, if it is alleged that a *finding* is "without support in the evidence," the *measure of review* is by the substantial evidence rule. That issue is inevitably raised, whether by name or by implication. [emphasis added]

One should not infer from this passage of the opinion that a motion for rehearing must specify the movant's contentions of error in all instances *apart* from a complaint that the agency order is without substantial evidence to support it, on a theory that such "issue is inevitably raised" on judicial review of the order. Rather, the passage merely points out that when a *finding of fact* is attacked on judicial review, by a complaint that it is "without support in the evidence," then such complaint will be evaluated and determined under the *measure* provided by the *substantial evidence rule,* in cases where the applicable law provides that mode of reviewing evidentiary issues or where the applicable law fails to "define the scope of judicial review." APTRA § 19(e). So much is subsumed from the premise that a particular *finding* has been attacked.

tems for which plans are subject to review and approval by the Texas Department of Health Resources." 1977 Tex.Gen.Laws, ch. 870, § 1, at 2302. The provisions of Tex. Rev.Civ.Stat.Ann. art. 4477–1, § 12(a) (1976) require Health Department approval of plans and specifications for "any ... sewage disposal systems for public use." Assuming that the Commission *could* make adequacy of such plans and specifications a condition for the issuance of a waste discharge permit, by making its own evaluation or by requiring the approval of the Department of Water Resources, the Commission was not required to do so, and it appears that it did not do so in this case.

■ Next, we consider Hooks' point of error which contends that the Commission's findings of fact establishing the validity of its notice by publication were not supported by substantial evidence. If we assume this point to have been properly preserved for judicial review, by a specific assignment of error in Hooks' motion for rehearing, and if we also assume that there was not substantial evidence adduced in the agency to establish the validity of such notice, we must nevertheless hold any error harmless with regard to Hooks because he had actual notice of the hearings and participated in them. *City of San Antonio v. C.D.J. Enterprises, supra,* at 576.

### IV

■ In Hooks' third point of error, he contends that the Commission's order authorizing the permit was not final and therefore not appealable; and, that the judgment of the district court, affirming the agency order, should therefore "be vacated and the cause dismissed[,] leaving this matter pending before the Texas Water Commission for final disposition." Hooks' theory is that two "requirements" contained in the permit were prospective because they looked to future administrative approval of several aspects of the treatment plant operation. The district court concluded that these requirements did "not constitute conditions which had to be satisfied before the permit was issued or effective and did not prevent the agency order from becoming final for the purpose of judicial review." In concluding that Hooks had "standing" or the requisite "justiciable interest," as a "person aggrieved by a *final* decision in a contested case," under APTRA § 19(a), the Supreme Court of Texas has necessarily resolved this issue against Hooks, assuming that he, as the party invoking judicial review, may raise the issue at all. Nevertheless, we have examined Hooks' claim in this regard and find it to be without merit.

### V

■ In Hooks' fourth point of error, he contends that the district court erred in affirming the Commission's order because the only evidence which the Commission was entitled to consider established that Musterman had not received from the State of Texas a certificate of authority to transact business in the State as a foreign corporation. George Musterman testified at the hearing on February 1, 1978 that Musterman, Inc., had not received a certificate at that time; however, a few days later Musterman, Inc., moved to reopen the hearings, over Hooks' objection, on the basis that such testimony had been in error and that the corporation had, indeed, received such a certificate on January 23, 1978. The Commission reopened the hearings and received evidence on the matter, including the introduction of the certificate. We hold that this course was within the discretion of the Commission and that the Commission was therefore entitled to consider the evidence adduced at the subsequent hearing. *City of El Paso v. Public Utility Commission of Texas,* 609 S.W.2d 574, 578 (Tex.Civ.App. 1980, no writ). Moreover, we note that no provision in the Texas Water Code forbids the Commission to issue a waste discharge permit to a foreign corporation not certified to do business in this State. Tex.Bus.Corp. Act Ann. art. 8.18 (1980) does provide sanctions for a corporation's transacting business in the State without a certificate of authority issued by the Secretary of State; however, our attention has not been invited to any statute or judicial decision which renders uncertified foreign corporations ineligible to receive permits issued by the

State of Texas. In addition, we observe that Tex.Bus.Corp. Act Ann. art. 8.01(B)(1) (1980) expressly provides that "a foreign corporation shall not be considered to be transacting business in this state" merely as a result of "[m]aintaining ... any administrative ... proceedings." We overrule Hooks' fourth point of error on the additional ground that any error was harmless.

## VI

In Hooks' fifth point of error, he contends that the district court erred in failing to rule on all his contentions of error raised in that court. The specific contentions which Hooks refers to in this connection relate to the action of the hearing examiner in reopening the agency proceeding to allow the introduction of evidence relating to Musterman's receipt of a certificate of authority to transact business in the State of Texas, issued by the Secretary of State. We have previously held this not to be error, and harmless if it was, since any lack of authority was immaterial. The failure of the district court to rule on these issues would require reversal only if Hooks' contentions were valid. They are not. The district court did rule expressly that Musterman's certificate of authority was admissible, that Musterman's failure to obtain it earlier did not preclude issuance of the waste discharge permit, that the Commission was not biased in favor of Musterman, and that the hearing examiner acted within his authority in reopening the proceedings to receive the additional evidence. We overrule Hooks' fifth point of error.

## VII

Finally, in Hooks' sixth point of error, he contends that the district court erred in failing to file conclusions of law and findings of fact which Hooks had requested. The district court may "unfind" facts previously and erroneously found by the agency; however, we find no authority for the proposition that the court may make findings of fact which the agency should have made. This proposition is contrary to the scheme of judicial review provided by APTRA. *See Galveston Bay Conservation and Preservation Association v. Texas Air Control Board,* 586 S.W.2d 634, 639 (Tex. Civ.App.1979, writ ref'd n.r.e.) In a brief phrase, Hooks' statement of his point of error does recite that "[t]he trial court erred by not filing the requested conclusions of law ...," but he does not in any way explain why this was error. We will not strive to find error when the error is not suggested by appellant himself. We overrule Hooks' sixth point of error.

Finding no error in the judgment of the trial court, we affirm it.